IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

The Epicentre Strategic                         Case No. 3:04CV7467
Corporation – Michigan,

       Plaintiff,

         v.                              ORDER


Perrysburg Exempted Village
School District, et al.,

       Defendants.
_____

The Epicentre Strategic                         Case No. 3:05CV7409
Corporation - Michigan, et al.,

       Plaintiff,

         v.


Rudolph/Libbe Company, Inc.,

       Defendant.


     This suit arises from the construction of a new high school in Perrysburg, Ohio.

C&R Masonry of Michigan (C&R) and Epicentre Strategic Corp., the alleged assignee of

C&R, have brought suit against Rudolph/Libbe Company, Inc. (Rudolph), the project

manager. In addition, Epicentre brought suit separately against Perrysburg Exempted

Village School District (the District). Those cases were consolidated January 19, 2006.

Jurisdiction exists pursuant to 28 U.S.C. § 1332.

     Pending are Rudolph's motions to dismiss and strike the complaint against it and

the District's motion for summary judgment. For the following reasons, both dispositive motions shall be granted.

**Background**

In May, 1999, the District contracted for Rudolph to provide construction management services (as distinguished from general contracting services) for its new high school.

Six months later, in November, 1999, the District published bid packages for the individual prime trades. C&R submitted the lowest responsible bid for masonry work. Consequently, on February 4, 2000, the District awarded that firm masonry contracts in the amount of $4,159,000. No contractual relationship existed between C&R and Rudolph, the project manager.

The bid packages included "milestone dates," which individual contractors were to use to fashion their bids. C&R claims it relied on these dates in making its bid and staffing its part of the project. It claims the parties were contractually bound by these milestone dates.

The contract required C&R, before beginning work, to submit a contractor's construction schedule to Rudolph, which Rudolph would then use to create a master schedule. C&R transmitted most of the necessary information in February, 2000. Rudolph, in turn, provided a document entitled, "Master Schedule" on March 28, 2000. This document included the milestone dates originally part of the bid packages as "late finish" dates, but also included more aggressive "early start" and "early finish" dates. Rudolph noted in this document that C&R still needed to send information concerning

2

architectural block and brick work and that C&R should immediately contact Rudolph should it have concerns with this schedule. C&R did not raise any concerns at that time. It contends, however, that the March 28 Master Schedule only covered a portion of the project and was not really a "master schedule".

Construction did not go smoothly. The masonry work fell behind almost immediately. Delays in that work impacted the progress of other prime contractors. To compensate, the District, at substantial cost, supplemented C&R's workforce. It repeatedly indicated to C&R that the delays had affected the entire project.

On May 31, 2001, Rudolph advised C&R that the District would, pursuant to the contract, impose "backcharges" related to the delays that would alter the contract price for the masonry work. On June 25, 2001, C&R notified the Rudolph that it disputed the backcharges and believed it was entitled to additional compensation. In that notice, C&R stated explicitly that it was not making a claim under the contract.

C&R did not complete its work until July 2, 2001, approximately two months later than specified under the contract. C&R contends it had to expend an additional 20,000 man hours above what it originally bid.

The parties disagree about what caused the delays. The District and Rudolph contend that C&R initially understaffed the project, which put it behind schedule from the beginning and affected the pace of work going forward. In contrast, C&R argues Rudolph failed to provide a sufficient master schedule and negligently managed the project. In addition, C&R alleges the District breached its contract by: 1) unilaterally

altering the milestone dates included in the bid packages; 2) failing to provide sufficient project management; and 3) failing to provide a master schedule.

## Discussion

### A. Plaintiffs' Tort Claims Against Rudolph

C&R contends that Rudolph's negligence in managing the project, including but not limited to failing to provide a master schedule, caused its significant delay, resulting in backcharges and forcing it to expend additional resources on the project.

Even assuming these claims have merit, C&R's cause of action against Rudolph is time-barred. Ohio law provides a four year statute of limitations for negligence actions, unless specifically excepted by statute. O.R.C. § 2305.09. A negligence action arises, for statute of limitations purposes, when the aggrieved party becomes aware, or should have become aware, of the tortious conduct and first suffers injury. *State ex rel. Teamsters Local Union 377 v. City of Youngstown*, 50 Ohio St.2d 200, 204 (1977).

C&R became aware of Rudolph's alleged negligence by June 25, 2001, at the latest. On that date, C&R submitted a letter to Rudolph concerning the negligence, which allegedly included a detailed affidavit outlining the issues. Consequently, C&R, according to the defendant, filed this action four months too late.

C&R disagrees. It claims the statute of limitations did not actually begin to run until October 31, 2005, and that its tort action is therefore timely. In support of the October 31, 2005, benchmark, C&R alleges: 1) the contract prevented them from filing this action prior to that date; and 2) they suffered no actual damage until that date. Both arguments are without merit.

4

First, the contractual dispute resolution procedures did not prevent C&R from bringing its claim against Rudolph sooner. Put simply, Rudolph is not a party to the contract. While that document provided that internal adjudication of the claim "shall be required as a condition precedent to litigation of a Claim between the Contractor and Owner," Standard Form Agreement Art. 4.7.2; Supplementary Conditions Art. 4.7.2, no such impediment existed with respect to claims against Rudolph. C&R did not seek, and indeed could not seek, remedies against Rudolph under the contract prior to bringing suit. Consequently, C&R's reliance on the contractual claim provisions is misplaced.

Second, C&R contends that the statute of limitations on its tort claim did not begin to run until the architect, Fanning/Howey, denied its claim under the contract. C&R asserts that it suffered no damage until that moment and, thus, its cause of action did not accrue until such denial.

In Ohio, even if a party is aware of tortious conduct, its cause of action does not arise until that party suffers actual injury from the conduct. *Gray v. Estate of Barry*, 101 Ohio App. 3d 764, 768-69 (1995). Under this "delayed damage" rule, the statute of limitations on plaintiffs' claim against Rudolph did not begin to run until it incurred damages. *Jim Brown Chevrolet, Inc. v. S.R. Snodgrass, A.C.*, 141 Ohio App.3d 583, 587 (2001).

Nevertheless, C&R's claim arose in June, 2001, not October, 2005. C&R's argument that it did not suffer damage until Fanning/Howey rejected its claim conflates the duties, rights, and responsibilities of Rudolph, Fanning/Howey, and the District.

In C&R's June 25, 2001, letter (which it followed with a request on September

5

14, 2001, for additional time and money), C&R claimed it had to expend additional resources, including 20,000 man hours, on the project as a result of Rudolph's alleged negligence. Those extra costs are damages at issue and C&R had, as of its September, 2001, request, already spent the additional monies.

While C&R sought, and was eventually denied, reimbursement for those additional monies from the District under the contract provisions, that appeal does not alter when the damage occurred. Though C&R had the option to seek redress under the contract, exercise of that option cannot toll the statute of limitations with respect to a tort claim against someone who is not a party to that contract. Consequently, C&R suffered, and was aware of, injuries stemming from Rudolph's alleged tortious conduct by June 25, 2001. Thus, its cause of action arose at that time and its present claim is, therefore, untimely.

### B. Epicentre's Contract Claims Against the District

Epicentre, as C&R's assignee, also contends the District is responsible for the delays in construction. It claims, consequently, that the District is responsible for C&R's excess expenses and that any backcharges are unwarranted.

Even if Epicentre's allegations have merit, the contract bars these claims. As a condition precedent to litigation, a party must raise the grievance as a claim in front of the architect. Standard Form Agreement 4.7.2; General and Supplementary Conditions 4.7.1. If a party fails to bring a claim within twenty-one days of uncovering the basis for it, that claim is forfeit. General and Supplementary Conditions 4.7.7

C&R contends it raised these issues on June 25, 2001. However, that letter specifically noted that C&R was not then making a claim. The letter stated further that a claim would be forthcoming. The forthcoming claim did not arrive until three months later, September 14, 2001.

Nevertheless, even if the June 25, 2001 letter was a claim, it was still untimely. C&R admitted in both its letter of June 25, 2001, and its letter of September 14, 2001, that the delays affected construction from the very beginning. It contends the delays originate from an insufficient master schedule, a document they received March 28, 2000.

The claim presumptively dated from that moment. Indeed, the latest date C&R might be able to rely on would be sometime in late May, when the District informed C&R it was imposing backcharges. Even then, C&R sent its June 25 letter more than twenty-one days after that instance. Thus, C&R never made a timely claim under the contract.

In response, Epicentre argues the District waived the contractual claim provision. A contract provision "will be held to have been waived by the parties when alterations have been made with knowledge and participation of all concerned, the evidence of which is clear and convincing, no fraud being shown." *Franz v. Van Gunten*, 36 Ohio App.3d 96, 100 (1987). However, in the absence of express authority to issue waiver, a construction manager's oral statement cannot constitute a waiver of the procedural protections in the District's contract with C&R. *Foster Wheeler Envirespose, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St. 3d 353, 360 (1997). Here,

Epicentre offers nothing but the uncorroborated testimony of C&R's CEO that Rudolph's representative waived the contract provision on the District's behalf. That, as a matter of law, is insufficient to establish the District's waiver. *Id*. Consequently, the contract bars Epicentre's contractual claims.

## Conclusion

In light of the foregoing, it is hereby

ORDERED THAT:

1) Defendant Rudolph's motions to strike and dismiss be, and the same hereby is, granted;

2) Defendant Perrysburg School District's motion for summary judgment be, and the same hereby is, granted.

So ordered.

/s/ James G. Carr
James G. Carr
Chief Judge

8